Case No.: 2015-cv-01817 WFK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MOHAMMED HASSAN,

                             Appellant

            -against-

RICHARD E. O'CONNELL, Chapter 7 Trustee of
MOHAMMED HASSAN,
a/k/a MOHAMMED H. HASSAM,
-----------------------------------------------------------X
In re:                                 EDNY Bankruptcy Case No.: 12-43627 cec
MOHAMMED HASSAN,
a/k/a MOHAMMED H. HASSAM,
                         Debtor.
-----------------------------------------------------------X
ON APPEAL FROM THE
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

**APPELLEE'S BRIEF ON BEHALF OF
RICHARD E. O'CONNELL,
Chapter 7 Trustee of Mohammed Hassan
a/k/a Mohammed H. Hassan**

**SAMUEL E. KRAMER**
Attorney for Richard E O'Connell,
 - Chapter 7 Trustee of Mohammed Hassan
  a/k/a Mohammed H. Hassan
225 Broadway - Suite 3300
New York, New York 10007
Telephone:    (212) 285-2290
Email:         samkatty@bway.net

# TABLE OF CONTENTS

Page

Table of Authorities ............................................................................ ii

REQUEST FOR ORAL ARGUMENT ............................................. 1

APPELLEE'S JURISDICTIONAL STATEMENT
PURSUANT TO B.R. 8014(b)(1) .................................................... 1

APPELLEE'S STATEMENT OF THE ISSUES OF THE CASE
AND THE APPLICATION STANDARD OF APPELLATE REVIEW
PURSUANT TO B.R. 8014(b)(2) ..................................................... 2

APPELLEE'S STATEMENT OF THE CASE
PURSUANT TO B.R. 8014(b)(3) ..................................................... 4

SUMMARY OF THE ARGUMENT
PURSUANT TO B.R. 8014(a)(7) and B.R. 8014(b) ......................... 10

ARGUMENT

POINT ONE
THE RECORD IS INCOMPLETE BECAUSE
OF APPELLANT'S FAILURE TO COMPLY
WITH THE BANKRUPTCY RULES ............................................... 11

POINT TWO
THE APPEAL IS MOOT .................................................................. 12

POINT THREE
THE 9019 MOTION SHOULD HAVE BEEN
GRANTED IN ANY EVENT ............................................................ 14

POINT FOUR
A.      THE *ROOKER-FELDMAN* DOCTRINE DOES
        NOT SUPPORT DENIAL OF THE 9019 MOTION ............... 18

B.      APPELLANT CANNOT RELY ON THE DOCTRINE OF
        *RES JUDICATA* TO REVIVE THE USURY OR TILA CLAIMS ........... 20

**TABLE OF CONTENTS (Continued)**

Page

POINT FOUR (Continued)
C.      IN ANY EVENT, THE ALLEGATIONS OF
        USURY AND TILA VIOLATIONS WERE THE SUBJECT OF
        DISCUSSION IN THE BANKRUPTCY COURT ..................................... 21

POINT FIVE
THERE WAS NO UNCONSTITUTIONAL TAKING ............................................ 23

POINT SIX
APPELLANT'S "NEW" ABANDONMENT ARGUMENT
DIRECTLY CONTRADICTS THE BANKRUPTCY CODE ............................... 25

CONCLUSION ..................................................................................................... 27

# TABLE OF AUTHORITIES

**Page:**

**Cases:**

*In re Adelphia Communications Corp.*, 361 B.R. 337 (S.D. N.Y. 2007) .................. 13

*In Re Barnet*, 737 F.3d 238,242 (2d Cir. 2013). ........................................... 13

*In re Carla Leather*, 44 B.R. 457 (Bkrtcy. S.D.N.Y.),
  *aff'd* 50 B.R. 764 (S.D.N.Y. 1985) ............................................... 16

*Classic Automobiles, Inc. v. Oxford Resources Corp..*
  204 A.D.2d 209 (1ˢᵗ Dept. 1994) ................................................ 20
.
*In re Del Grosso*, 106 B.R. 165, (Bkrtcy. N.D. Ill. 1989) ........................... 16

*In re: Drexel Burnham Lambert*, 138 B.R. 723 (Bkrtcy. S.D.N.Y. 1992) ................. 16

*In re: Emmons-Sheepshead Bay Development LLC\*
  (09/23/14 E.D. N.Y. Case No.: 13-cv-05430 RRM (ECF Docket No. 12) ......... 3-4, 11-12

*In re: Erickson*, 82 B.R. 97, 99-101 (Bkrtcy. D. Minn. 1987) ..................... 17

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005) .................. 18

*In re: Hermitage Inn*, 66 B.R. 71 (Bkrtcy. D. Col 1986) ............................... 17

*Henry Modell Co., Inc. v.*
*Ministers, Elders and Deacons of Reformed Protestant Dutch Church*,
  68 N.Y.2d 456 (1986) ............................................................ 20

*Hoblock v. Albany County Board of Elections*, 422 F.2d 77 (2d Cir. 2005) ................ 18

*Louisville Joint Stock Land Bank v Radford* , 295 U.S. 555 (1935) ............................ 23

*Marvel Characters, Inc. v. Simon*, 310 F3d 280 (2d Cir 2002) ...................... 20

*In re: Masters, Inc.*, 149 B.R. 289 (E.D.N.Y. 1992) ..................................... 16

*Miller v. Generale Bank Nederland, N.V*, 217 F. 3d 74 (2d Cir. 2000) ........................... 26

-iii-

# TABLE OF AUTHORITIES (continued)

Page:

**Cases:**

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972),
 *cert denied sub nom Benson* v. *Newman*, 409 U.S. 1039 (1972) ............................... 15

*Plummer v. Chemical Bank*, 668 F.2d 654 (2d Cir. 1982) ............................................ 22
.
*Protective Committee , etc. v. Anderson,* 390 U.S. 414  (1968) ................................. 15

*In re Purofied Down Products*, 50 B.R. 519 (S.D. N.Y. 1993) ................................... 22

*In re: Sanshoe Worldwide Corp.*, 993 F.2d 300 (2d Cir. 1993) ................................. 2

*In re: W.T.Grant Co.*, 699 F.2d 599 (2d Cir. 1983) ..................................................... 15

*Yeiser v. GMAC Mortgage Corp.*, 535 F. Supp. 2d 413, 421 (SD. N.Y. 2008) ............ 20

**Constitutions/Statutes:/Rules:**

U.S., Constitution, 5th Amendment ................................................................... 23-24

11 U.S.C  § 341 ............................................................................................................. 7

11 U.S.C. § 541 (a) ................................................................................... 10, 19, 24

11 U.S.C. § 554 ( c ) ................................................................................................ 15-16

15 U.S.C. § 1601 ................................................................ 8, 10, 17, 19, 20-26

28 U.S.C. § 158 (a)(1) .............................................................................................. 2

28 U.S.C. § 586 (a) ............................................................................................... 10, 23

28 U.S.C. § 1334(b) ................................................................................................. 1

B.R, 8005 ..................................................................................................... 13

B.R. 8009(b)(1)(A) and (B) ............................................................................... 10

**TABLE OF AUTHORITIES (continued)**

**Page:**

**Cases:**

B.R. 8014(a)(4)( c ) ...................................................................................   4

B.R. 8014 (b)(2) .........................................................................   10

New York General Obligations Law § 5-501 ........................................... 8, 10, 17, 19, 20-26

New York Banking Law Article 14-   .......................................................8, 10, 17, 19, 20-26

## REQUEST FOR ORAL ARGUMENT

To the extent that Appellant has requested oral argument on this appeal, and to the extent that the Court may grant Appellant's request, Appellee requests oral argument.

### APPELLEE'S JURISDICTIONAL STATEMENT
### PURSUANT TO B.R. 8014(b)(1)

This brief is submitted on behalf of appellee, Richard E. O'Connell ("Appellee" or the "Trustee") Chapter 7 Trustee of the Bankruptcy Estate of debtor, Mohammed Hassan a/k/a Mohammed H. Hassan ("Appellant", "Debtor" or "Hassan").

The United States Bankruptcy Court, Eastern District of New York (the "Bankruptcy Court"), has jurisdiction of *In re: Mohammed Hassan a/k/a Mohammed H. Hassan* (E.D. N.Y. Bankr. Case No.: 12-43627 cec; the "Bankruptcy Case" or "In re: Hassan") pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012.

The Decision of the Bankruptcy Court from which the appeal is taken, dated March 19, 2015 (A3-16[1]; the "Decision") was made upon Appellant's motion (the "Motion to Reconsider") pursuant to Rule 9023 of the Federal Rules of Bankruptcy Procedure ("B.R.") which the Bankruptcy Court "treated as a motion to alter or amend judgment under Rule 59 [of the Federal Rules of Civil Procedure]" (A 10) and "resolves the motions of [Debtor] to reconsider an order approving a settlement between [the Trustee] and creditor, Yair Kerstein ("Mr. Kerstein"), that resolved the estate's claims against Kerstein for $45,000 [(the " 9019 Motion")], and to compel the Trustee to abandon those claims back to the Debtor [(the "Abandonment Motion")]." (A 4).

---

[1]References to "A __ " are respectfully made to pages of Appellant's Appendix.

This Court has jurisdiction of this appeal  –  as limited by Appellant's Brief ("App. Br.") – of the "bankruptcy court decision in approving the Rule 9019 motion, settling all claims and denying motion to abandon" (App. Br., p. 4) pursuant to 28 U.S.C. § 158 (a)(1). "The district court acts as an appellate court in reviewing a bankruptcy court's judgments." *In re: Sanshoe Worldwide Corp.*, 993 F.2d 300, 305 (2d Cir. 1993).

### APPELLEE'S STATEMENT OF THE ISSUES OF THE CASE AND THE APPLICATION STANDARD OF APPELLATE REVIEW PURSUANT TO B.R. 8014(b)(2)

The issues in this case are:

1.      Whether the District Court should dismiss the appeal in the absence of an complete record, the fault of which is Appellant's?

> *The Court should have before it the transcript of the hearing of January 20, 2015 on the Reconsideration Motion and the Consolidation Motion, absent which may, in its discretion, dismiss the appeal, or grant leave to obtain the complete record.*

2.      Whether the Appeal is moot based on the closing on the sale of the real property at issue?

> *The appeal is moot because the sale on the real property located at 114-20 101st Avenue, Richmond Hill, New York closed on February 25, 2015.*

3.      Whether the Decision granting the 9019 Motion was made in error based upon the *Rooker-Feldman* Doctrine?

> *The granting of the 9019 Motion was not made in error based*

-2-

upon the *Rooker-Feldman Doctrine.*

4.      Whether the Decision granting the 9019 Motion was made in error based upon the Takings Clause of the 5th Amendment to the Constitution?

*The granting of the 9019 Motion was not made in error based upon Takings Clause of the 5th Amendment to the  Constitution grounds other than the Rooker-Feldman Doctrine.*

5.      Whether the Decision denying the Abandonment Motion was made in error?

*The denial of the Abandonment Motion was not made in error.*

Pursuant to former B.R. 8013 on appeal " the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."

As stated in *In re: Emmons-Sheepshead Bay Development LLC* (09/23/14 E.D. N.Y. Case No.: 13-cv-05430 RRM (ECF Docket No. 12), p. 8:

> A finding is clearly erroneous when "although there is evidence to support it, the review court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985).  Conclusions of law of a bankruptcy court are reviewed *de novo, see, e.g.* *In re: Bayshore Wire Prods Corp.*, 209 F.3d 100, 103 (2d Cir. 2007), while mixed questions of law and facts are reviewed "either *de novo* or under the clearly erroneous standard depending on whether the question is predominately legal or factual. "*In re Am. Express Merchants' Litig.* 554 F.3d 300, 316 n. 11 (2d Cir. 2009), *vacated on other*

-3-

*grounds by Am. Express Co. v. Italian Colors Rest.*, 130 S.Ct. 2401(2010),

With respect to the "filing dates establishing the timeliness of the appeal", as required pursuant to B.R. 8014(a)(4)( c ) Appellee hereby respectfully incorporates by reference the letter of Appellee's undersigned counsel, dated April 30, 2015 (ECF No.: 9, "Letter MOTION to Vacate Scheduling Order regarding timeliness of debtor's appeal by Richard E. O'Connell") and Appellee makes respectful reference to the Order thereon, granted May 1, 2015.

### APPELLEE'S STATEMENT OF THE CASE
### PURSUANT TO B.R. 8014(b)(3)

1.     Appellant filed five (5) petitions since the entry of a Judgment of Foreclosure and Sale in the sum of $255,331.64 on July 25, 2011 (the "Foreclosure Judgment") in *Kerstein v. Hassan* in Supreme Court of the State of New York, County of Queens, on August 12, 2010 (Index No.: 20478/2010; "*Kerstein v. Hassan*"):

    a.     On September 22, 2011, Appellant (identifying himself as Mohamed Hassan a/k/a H&H Furniture Co.) filed a petition under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court, Eastern District of New York (Case No.: 11-48063-cec); Appellant failed to file schedules as required by the Bankruptcy Code (T 138)[2] and the case was dismissed on December 23, 2011 (T 141).

    b.     On February 9, 2012, Appellant filed a petition under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court, Eastern District of New York (Case No.: 12-40906-cec); the case was dismissed on March 30, 2012. (T 147).

---

[2]References to "T ___ are respectfully made to the Trustee's Appendix.

-4-

c.                  On May 17, 2012, Appellant filed a petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court, Eastern District of New York (Case No.: 12-43627-cec). In his Schedules, filed on June 22, 2012, Debtor identified total personal property valued at $21,311.39, and makes no mention of any claims *against* Mr. Kerstein. (A-161-192)  This case was closed on September 21,2012 and reopened on June 20, 2013 (A 65).  This case is now on appeal.

d.                  On November 29, 2012, Appellant filed a petition under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court, Eastern District of New York (Case No.: 12-48130-cec) An Order granting relief from the Automatic Stay regarding 114-20 101st Avenue, Richmond Hill, New York to enable the foreclosure in Kerstein v. Hassan to continue (the "Lift Stay Order"; T 155-156). Appellant's third Chapter 13 Case was dismissed on March 5, 2013 (T 158).

e.                  On March 7, 2013, Appellant filed a Petition under Chapter 7 of Title 11 of the Bankruptcy Code in the United States Bankruptcy Court, Eastern District of New York (Case No.:13-41288-cec); the Trustee herein (*i.e.*, Mr. O'Connell) was appointed Chapter 7 Trustee and case was closed on June 20, 2013 (A 80-86).

2.           The mortgage held by Mr. Kerstein was secured by two properties, one at 114-20 101st Avenue, Richmond Hill, New York, which was the subject of Kerstein v. Hassan (the "Commercial Property"), from which Appellant operated his business, the other at Appellant's residence 133-01 116th St. South Ozone Park, New York (the "Residential Property"). (A 26-36 ).

3.          Based upon Appellee's initial analysis, it appeared that the mortgage document recorded in the Office of the City Register of the City of New York, County of Queens on February 8, 2008 ("Mr. Kerstein's Mortgage"), may have been subject to attack.  It appeared to contain certain hand written notations at the foot of the first page which purported to identify one property as being a "Dwelling - one family" and the other property as being "Commercial RE" and appeared to contain certain additional typed-in text purporting to describe the two properties and which may have affected the validity of  Mr.  Kerstein's mortgage and the Foreclosure Judgment.  (A 90-97).

4.          If the Foreclosure Judgment was successfully challenged., Mr. Kerstein would become an unsecured creditor.  However, because Appellant had failed (once again) to file his schedules in Case No.:13-41288-cec (*i.e.*, Appellant's fifth case), the case was in danger of being dismissed and Appellee moved pursuant to 11 U.S.C. § 521(a)(1)(B), to extend the time for Appellant to filed his schedules (A 81; Docket No. 12 ). Mr. Kerstein opposed the motion and at a hearing on the motion, at the suggestion of the United States Trustee, Case No. 12-43627 (Appellee's previous Chapter 7 case) was reopened, and Appellee was appointed successor Trustee of Case No. 12-43627 (A 65; Docket No. 27).

5.          Negotiations were commenced between the undersigned and Mr. Kerstein's counsel. Upon a further investigation and analysis of Mr. Kerstein's  mortgage, Appellee concluded as a matter of his best business judgment, that the objections would not withstand judicial scrutiny, that Appellee was highly unlikely to prevail in the event he challenged the mortgage and the Foreclosure Judgment, and that the cost of litigation was outweighed by the likelihood of success (A 94-95).

6.          Despite Mr. Kerstein's belief that the Foreclosure Judgment is valid and he would prevail in his defenses to Trustee's Potential Objections, but nonetheless offered to pay to Appellee the sum of $45,000.00, in consideration for a waiver by the Appellee of all other claims which Appellee might have with respect to the validity of the Foreclosure Judgment (the "$45,000 Offer") Appellee considered all aspects of *Kerstein v. Hassan*, including the mortgage and any potential attack on the Foreclosure Judgment and determined that it was in the best interests of the Appellant's Bankruptcy Estate to accept the $45,000 Offer.

7.          Appellee and Mr. Kerstein entered into a Stipulation (the "Stipulation") whereby, in exchange for the $45,000 Offer, Appellee consented to the Foreclosure Judgment, Terms of Sale and the Referee's Sale as a good and valid transfer of the Commercial Premises, and waive Appellee's objections with respect to the infirmities to Mr. Kerstein's mortgage which Appellee had initially thought might be present, as well as all other claims of any type, kind or nature which the Trustee might have with respect to the validity of the mortgage, the lien, the Referee's Sale and to the Foreclosure Judgment (A 99-103).

8.          Mr. Kerstein thereupon tendered the $45,000 Offer to Appellee, concurrent with his execution of the Stipulation, and Appellee brought the 9019 Motion, on notice to Appellant and all parties in interest, to approve the Stipulation.  As provided in the Stipulation, in the event that the Bankruptcy Court did not grant the 9019 Motion, Appellee would return the $45,000 Offer to Mr. Kerstein and the parties would return to *status quo,* with their respective rights reserved.

9.          Appellant retained new counsel and, on the eve of the hearing scheduled for July 10, 2014, Appellant submitted opposition to the 9019 Motion on the grounds that: (I) Appellant

-7-

was not examined pursuant to 11 U.S.C. § 341; (II) Appellant alleged statutory defenses of New York usury laws (*i.e.*, New York General Obligations Law § 5-501 and New York Banking Law Article 14-A ;"Usury") and violation of the Truth in Lending Act (15 U.S.C. § 1601, *et seq.*; "TILA"); and (III) Appellant wished to convert his case to one under Chapter 13 of the Bankruptcy Code  (A 110-126).

10.         The Bankruptcy Court directed that Appellant file a motion to convert the case to Chapter 13, which Appellant filed (the "Conversion Motion"), which included a an exhibit a motion which Appellant improperly brought in *Kerstein v Hassan* in Supreme Court , apparently for the purpose of demonstrating why he believed that Mr. Kerstein's mortgage was usurious and violated TILA[3]. (T 13-69).   Appellee and Mr. Kerstein opposed the Conversion Motion (T 70-82;T-83-117).   At the Sepetmber11, 2014 Hearing, the Court granted Appellant the opportunity to present additional evidence in support of the Conversion Motion; Appellant submitted none.

11.         Appellee also responded to Appellant's allegations regarding Usury and TILA and those arguments are set forth, *infra.*, at Point Five.

12.         On September 11, 2014[4], the Bankruptcy Court heard oral argument on the 9019

---

[3]. In his designation of documents in this appeal, Appellant did not include the Conversion Motion (which was denied and which Appellant's Brief does not address).  However, by failing to include documents relative to the Conversion Motion in the record, Appellant did not put the decision of the Supreme Court, Queens County or Mr. Kerstein's opposition to the Conversion Motion  – which were of record before the Bankruptcy Court when it issued the Decision – before the District Court.   Appellee's Designation includes these documents.

[4]Appellant failed to order the transcript of the hearing held on January 20, 2015, or serve notice that was not ordering same in violation of B.R. 8009(b)(1)(A) or (B). Appellant failed to designate the transcript of the hearing held on September 11, 2014 and did not include it in his Appendix, although it does appear on the ECF Docket in the Bankruptcy Court.

Motion and the Conversion Motion.

13.     On October 15, 2014, the Bankruptcy Court issued an Order which granted the 9019 Motion and denied the Conversion Motion (the "October 15, 2014 Order").

14.     Appellant did not seek a Stay of the October 15, 2014 Order or the Lift Stay Order..

15.     On October 27, 2014, Appellant filed a document characterized as a Motion for Reconsideration (A127-138[5]) as well as the Abandonment Motion (A 146-155), both of which were opposed by Appellee (A139-145, A 156-160).

16.     On January 20, 2015, oral argument was held on the Motion for Reconsideration and the Abandonment Motion (*see*, Footnote 4, *supra.*).

17.     On February 25, 2015  – Appellant having failed to apply of obtain a stay of the October 15, 2014 Order or the Lift Stay Order  –   Mr. Kerstein closed on the sale of the Commercial Property (T 120-126).

18.     On March 20, 2015, the Decision was entered (A 3-16).

19.     On April 2, 2015, Appellant filed a Notice of Appeal.

20.     On April 3, 2015, the Clerk filed am Appeal Deficiency Motion (T 118).

---

[5] *See*, letter of Appellee's undersigned counsel, dated April 30, 2015 (ECF No.: 9, "Letter MOTION to Vacate Scheduling Order regarding timeliness of debtor's appeal by Richard E. O'Connell") and Appellee makes respectful reference to the Order thereon, granted May 1, 2015.

## SUMMARY OF THE ARGUMENT
## PURSUANT TO B.R. 8014(a)(7) and B.R. 8014(b)

The appeal is thoroughly without merit.  Leaving aside the fact that Appellant failed to comply with the B.R. 8009 (b)(1)(A) and (B), and thus failed to place before the District Court the full record, the appeal is moot.  Appellant failed to stay the sale of the Commercial Property, and the closing on that sale has taken place.

Even if Appellant had complied with the Bankruptcy Rules, and even if the District Court had before it a dispute which was not moot, any objections which Appellant may have had with respect to Mr. Kerstein's mortgage and to the Foreclosure Judgment were property of Appellant's Bankruptcy Estate pursuant to 11 U.S.C. § 541(a) and thus susceptible to be settled or compromised by Appellee, in the best interest of the creditors, pursuant to B.R. 9019, which is precisely what happened here.  Appellee determined that his alleged claims against Mr. Kerstein's mortgage and the Foreclosure Judgment – including the allegations of Usury and TILA violations – were worth $45,000.00.  The $45,000 Offer was well above  "lowest point in the range of reasonableness" and was certainly in the best interests of the creditors.

Appellant's argument that the Decision violated the *Rooker-Feldman* Doctrine is completely without merit; *Rooker-Feldman* has no application to these facts and *res judicata*, precludes a return to State Court. Mr. Kerstein's mortgage is not usurious, nor did it violate TILA, and these claims are worth no more than $45,000.. The argument that this is an unconstitutional taking flies in the face of 11 U.S.C § 586 and represents a misreading of the one case in support of this dubious constitution proposition. Finally, Appellant's argument with respect to abandonment is based on what could charitably called a misrepresentation of the record and is moot, in any event.

-10-

**ARGUMENT**

**POINT ONE**

**THE RECORD IS INCOMPLETE BECAUSE
OF APPELLANT'S FAILURE TO COMPLY
WITH THE BANKRUPTCY RULES**

*In re: Emmons-Sheepshead Bay Development LLC* (09/23/14 E.D. N.Y. Case No.:

13-cv-05430 RRM (ECF Docket No. 12), this Court (Hon. Roslynn R. Mauskopf, U.S.D.J.), was

faced with a situation in which "the Court finds the record on appeal worefully incomplete, as it does

not contain the transcript of the bankruptcy court's August 15, 2013 hearing and oral ruling on

Metropolitan's motion for reconsideration."  It bears mentioning that counsel for Metropolitan is the

same counsel as represents Appellant.

Even though Chief Bankruptcy Judge Craig reserved her Decision, in this case, the

Decision makes specific reference to the transcripts of the two hearings (September 11, 2014 and

January 20, 2015) with respect to which Appellant failed to meet the requirements of B.R.

8009(b)(1)(A) and (B) – which, it is respectfully submitted was amended effective December 1, 2014

for the purpose of clarifying the process for placing transcripts in the appellate record.   The District

Court should have both of these transcripts before it.  As Judge Mauskopf stated  *In re Emmons-*

*Sheepshead Bay Development, LLC, id.*, at p. 5:

> By not providing the transcript of that August 15th hearing, the Court
> is left to wonder what issues were raised and resolved at the hearing
> on reconsideration, the nature and scope of Judge Stong's oral ruling,
> and the reasons underlying the court's conclusions.   Under these
> circumstances, the Court does "not have a complete record to review
> the bankruptcy court's findings."  Harris, 464 F.3d at 269. The
> question becomes how best to address the incompleteness of this
> record, given the issues raised on appeal.  Bankruptcy Rule 8001
> endows the Court with discretion to dismiss an appeal without

-11-

reaching the merits when the appellant fails to perform a necessary step in completing the record. See In re Hawkins, 295 F. App'x 452, 453 (2d Cir. 2008) ("The rule makes clear that a district court enjoys discretion to dismiss an appeal in all cases except where the debtor does not file a timely notice of appeal, in which case the court has no choice but to dismiss the case") (quoting Harris, 464 F.3d at 270). Dismissal can be appropriate when, as here, the order appealed from does not disclose the factual or legal basis of the bankruptcy judge's decision, and the appellant has failed to provide the Court with a key transcript.  See, e.g., In re Corio, 2008 WL 4372781, at *7 (D. N.J. Sept. 22, 2008) (dismissing portion of appeal as to which the appellants failed to provide an "appropriate record to allow the Court to conduct an informed, substantive appellate review," without prejudice to moving to reinstate once proper record provided). Alternatively, faced with the absence of the specific content of Judge Stong's legal conclusions underlying her denial of the reconsideration motion, the Court could simply affirm the order.  See In re Dockal, 2005 WL 3337774, at *3 (W.D. Tex. Sept. 6, 2005). ...

In *In re Emmons-Sheepshead Bay Development,LLC*, "the Court finds that it is I able to address the merits (or lack thereof) of Metropolitan's arguments based on the record as it currently stands" (*id,* at p. 7). While the same substantive result should apply here, in view of counsel's knowledge of the District Court's need to have before it the full record on appeal  –  as no doubt should have been learned from *In re Emmons-Sheepshead Bay Development,LLC* – it is respectfully submitted that dismissal of the appeal would be entirely appropriate.

## POINT TWO

### THE APPEAL IS MOOT

Appellant is no longer aggrieved by the Decision which is the subject of this appeal; accordingly, the appeal is barred by the doctrine of mootness.  When the 9019 Motion was granted, and the Conversion Motion was denied by the October 15, 2014 Order.  Mr. Kerstein had a clear path to close on the sale which had taken place pursuant to the Foreclosure Judgment, which was

-12-

granted in 2011.  Indeed, the entire point of Appellant's filing five (5) bankruptcy petitions was to prevent a sale of the Commercial Property.

However, Appellant failed to even apply for a stay under B.R. 8005, which would have required, *inter alia*, a showing of likelihood of success, *In re Adelphia Communications Corp.*, 361 B.R. 337, 349 (S.D. N.Y. 2007).   Perhaps, if a stay had been granted, the sale would not have closed, as it did, on February 25, 2015.

"'The current Bankruptcy Code prescribes no limits on standing beyond those implicit in Article III of the United States Constitution. Congress has given us jurisdiction over all final decisions, judgments, orders, and decrees of the district courts in bankruptcy cases. . . .' DISH Network  Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.), 634 F.3d 79, 88 (2d Cir.2011) (internal citations and quotation marks omitted). Nonetheless, our precedents establish "'that in order to have standing to appeal from a bankruptcy court ruling, an appellant must be a person aggrieved - a person directly and adversely affected pecuniarily by the challenged order of the bankruptcy court.'" Id. at 89 (internal quotation marks omitted) (quoting Int'l Trade Admin, v. Rensselaer 'Polytechnic Inst, 936 F.2d 744, 747 (2d Cir. 1991)).[fn1] This test is 'stricter than Article Ill's 'injury in fact' test,' and its 'stringency . . . is rooted in a concern that freely granting open-ended appeals to those persons affected by bankruptcy court orders will sound the death knell of the orderly disposition of bankruptcy matters.' Licensing by Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380, 388 (2d Cir.1997); see In re DBSD N. Am., Inc., 634 F.3d at 110 (quoting In re Gucci 126 F.3d at 388)." *In Re Barnet*, 737 F.3d 238,242 (2d Cir. 2013).

Furthermore, Appellant cannot be heard to argue that the appeal is not moot because of the danger of Mr. Kerstein foreclosing on the Residential Property under Mr. Kerstein's mortgage.

-13-

*Kerstein v. Hassan* involved only the foreclosure of the Commercial Property.  It is respectfully submitted that if the District Court had before it the transcript of the Hearing of January 20, 2015, it would know that Mr. Kerstein's attorney made it absolutely clear that if the Appellant expressed no further interest in pursuing any effort to foreclose on the Residential Property, and a satisfaction of Mr. Kerstein's mortgage was within his grasp.

Yet, Appellant would not take "yes" for an answer and, instead, decided to continue with the Motion to Reconsider, the Abandonment Motion and now, this appeal.   As a result, Appellee cannot close the Chapter 7 Case and Appellee's legal fees continue to mount to the point that the $45,000 Offer is likely to be exhausted by continued administrative expenses.

## POINT THREE

### THE 9019 MOTION SHOULD HAVE BEEN
### GRANTED IN ANY EVENT

It is respectfully submitted that the $45,000 Offer was a tremendous success.  If Mr. Ketrstein's mortgage had been subjected to judicial scrutiny, no infirmities would have been found. Appellee's undersigned counsel spent considerable effort analyzing Mr. Kerstein's mortgage and the Foreclosure Judgment, and would have had no hesitancy, in the best interests of the creditors, to seek to have Mr. Kerstein's mortgage stricken and have the Foreclosure Judgment vacated.

However, after consultation with his undersigned counsel, Appellee determined that there was little likelihood that Appellee would have been successful in these efforts and that, in any event, the costs of litigation were not worth the effort and that the $45,000 Offer was in the best interests of the creditors.

In a case arising under the former Bankruptcy Act, the Supreme Court directed that

-14-

the proposed settlement of disputes by a bankruptcy trustee "receive the informed independent judgment of the bankruptcy court", *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); in arriving at such judgment, the bankruptcy court should:

> [F]orm an educated estimate of the complexity, expense and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of a proposed compromise. Basic to this process in every instance, of course is the need to compare the terms of the compromise with the likely rewards of the litigation. id.

Fifteen years later, in *In re: W.T.Grant Co.*, 699 F.2d 599 (2d Cir. 1983), with Judge Friendly writing, emphasized the task of the bankruptcy court in assessing the propriety of a settlement proposed by a trustee is both substantive and circumscribed:

> In undertaking an examination of the settlement, we emphasize that this responsibility of the bankruptcy judge, and ours upon review, is not to decide the numerous questions of law and fact raised by appellants, but rather to canvass the issues and see whether the settlement "falls below the lowest point in the range of reasonableness", *Newman* v. *Stein*, 464 F.2d 689, 693 (2d Cir.), cert *denied sub nom Benson* v. *Newman*, 409 U.S. 1039 (1972).

Courts in this Circuit have followed Judge Friendly's *Gran*t dictum that their task in determining the propriety of a proposed settlement is to "canvass the issues" with a view to discerning whether the proposed settlement falls within a minimum range of reasonableness.

The task of the bankruptcy court in assessing the propriety of a settlement proposed by a trustee is both substantive and circumscribed. In determining the propriety of a proposed settlement the task of the bankruptcy court is to canvass the issue with a view to discerning whether the proposed settlement falls within a minimum range of reasonableness. For example, in *In re*

-15-

*Carla Leather*, 44 B.R. 457 (Bkrtcy. S.D.N.Y.), *aff'd* 50 B.R. 764 (S.D.N.Y. 1985), the bankruptcy court set out a primer of sorts for the task of discerning whether a proposed settlement exceeds that "lowest point in the range of reasonableness" required under *In re W.T. Grant, supra.*, "does not portend substitution of the court's judgment for that of the Trustee". *In re Carla Leather*, 44 B.R. at 466. The Bankruptcy Court's task is, "to canvass the issues and see whether the settlement 'falls below the lowest point in the range of reasonableness'" *Id.* "The factors applicable to that consideration", the court continued, "are well established:

> (1)  The probability of success on the merits.
>
> (2)  The difficulties, if any, to be encountered in the matter of collection.
>
> (3)  The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it.
>
> (4)  The paramount interest of the creditors and a proper deference to their reasonable views in the premise."*Id.*

The four prong test set forth in *Carla Leather*, typically coupled with a citation of the *Grant* dictum that the reviewing court's function is to canvass, rather than decide, issues with a view to determining whether a settlement exceeds to lowest point in the range of reasonableness, has been accepted in the Eastern District of New York, the Southern District of New York and elsewhere  as the standard for determining the propriety of settlements under F.R.B.P.). 9019(a). *See*, *e.g.*, *In re: Masters, Inc.*, 149 B.R. 289 (E.D.N.Y. 1992) ("In exercising its discretion ...  a bankruptcy court must determine whether the compromise is reasonable considering such factors as the likelihood of success ... the complexity and cost ... and the paramount interests of the creditors.  *In re W.T. Grant Co. ...*"); *In re: Drexel Burnham Lambert*, 138 B.R. 723, 758-759 (Bkrtcy. S.D.N.Y. 1992); *In re Del*

*Grosso*, 106 B.R. 165, 167-8 (Bkrtcy. N.D. Ill. 1989); *In re: Erickson*, 82 B.R. 97, 99-101 (Bkrtcy. D. Minn. 1987)(citing *Grant* and *Carla Leather*); *In re: Hermitage Inn*, 66 B.R. 71, 72 (Bkrtcy. D. Col 1986)(citing *Carla Leather*).

In support of the 9019 Motion, Appellee canvassed the issues surrounding the $45,000 Offer and demonstrated to the Court that all four factors met the test of *Carla Leather* and the settlement did not fall below the lowest point in the range of reasonableness.  The $45,000 Offer was intended to embrace, and did embrace, all claims which the Appellee, in his role as Trustee of Debtor's Bankruptcy Estate, owned regarding Mr. Kerstein's Mortgage and the Foreclosure Judgment.  These claims included not only the possible infirmities which Appellee had thought might exist regarding the execution of the mortgage, but also any other claims which Appellant owned on the date of the filing of his petition, including  – theoretically –  the Usury and TILA violations (which, as set forth, *infra*., the Trustee  believes have no merit).

Appellant, in opposing the 9019 Motion spent page after page arguing that he was denied due process rights because the Trustee now serving did not conduct a Meeting of Creditors pursuant to 11 U.S.C. § 341 (all the while ignoring the fact that before this case was closed, and the trustee's final report was filed, on September 21, 2012, Debtor was examined at Section 341 Meeting of Creditors on June 25, 2012, by the then-serving Trustee.  This argument is not asserted by Appellant in this appeal.

## POINT FOUR

### A.   THE *ROOKER-FELDMAN* DOCTRINE DOES NOT SUPPORT DENIAL OF THE 9019 MOTION

Appellant's primary argument now appears to be that the resolution of all claims, or potential claims, which the Trustee had or may have had with respect to Mr. Kerstein's mortgage and the Foreclosure Judgment was barred by the *Rooker-Feldman* Doctrine.   Appellant's argument bespeaks a fundamental misunderstanding of this simple judicial doctrine.

The *Rooker-Feldman* doctrine bars "cases brought by state court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).

"Underlying the *Rooker-Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions."   *Hoblock v. Albany County Board of Elections*, 422 F.2d 77, 85 (2d Cir. 2005).  In order for the *Rooker-Feldman* Doctrine to apply, four criteria must be met: (1) the federal court plaintiff must have lost in state court; (2) the plaintiff "must complaint of injuries caused by a state-court judgment"; (3) the plaintiff "must invite district court review and rejection of that judgment"; and (4) the "state court judgment must have been rendered before the district court proceedings commenced.." *Hoblock*, 422 F.3d at 85.

Appellant argues: "[W]hen the merits of the foreclosure a matter concluded and *Rooker-Feldman* stops the claims, the bankruptcy residual estate cannot provide the trustee with a standing to as for settlement.  Trustee does not have a standing.  Trustee interest or standing is co-

terminus with the mortgage debtor regarding the issue settled by the trustee.  Also trustee claims to have settled claims that never belonged to him when this case was closed. ..." App. Br., p. 7.

Appellant thus ignores the fact that any claims, or potential claims, which he may have had regarding Mr. Kerstein's Mortgage or the Foreclosure Judgment, or which he might assert in a counterclaim (which he never brought), including Usury and TILA violations are and always were property of his Bankruptcy Estate, pursuant to 11 U.S.C. § 541 (a):

> The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case. [Emphasis added.]

As if to emphasize the fact that the claims of Usury and TILA are property of the Bankruptcy Estate, and subject to disposition by Appellee under B.R. 9019, it bears note that in March, 2013, at a time when Appellant had voluntarily subjected himself to the jurisdiction of the Bankruptcy Court, he brought a motion in *Kerstein v. Hassan*  –  which was totally improper, and in which Appellant was represented by his counsel herein  –  in which he sought to undo the Foreclosure Judgment, based on allegations of Usury and TILA violations.

The Supreme Court of the State of New York, Queens County (Hon. Marguerite A Grays, J.S.C.) denied the Appellant's motion "in its entirety" and noted "there is a bankruptcy proceeding pending in the United States Bankruptcy Court for the Eastern District (case number 1012-41288-cec) which stays the within action (T-44)[6].

---

[6]Interestingly, while Appellant's Appendix includes the Order to Show Cause and counsel's affirmation in (A - 193 to A- 213), Appellant's Appendix does not include the Justice Gray's decision denying the motion.

### B.  APPELLANT CANNOT RELY ON THE DOCTRINE OF *RES JUDICATA* TO REVIVE THE USURY OR TILA CLAIMS

To the extent that Appellant seeks to re-visit *Kerstein v. Hassan*, and assert his Usury and TILA claims in the context of a permissive counterclaim, this effort would be barred by *res judicata.*  Chief Bankruptcy Judge Craig reminded Appellant of the following precedents at the hearing held on September 11, 2014, and recited the following quotations into the record (*See*, Transcript of Proceedings, p. 32., l. 10 to p. 33, l. 17, Bankruptcy Case ECF Docket No.: 68):

- "Under New York law a final judgment on the merits precludes the parties of their privies from relitigating claims that were or could have been raised in that action."  *Marvel Characters, Inc. v. Simon*, 310 F3d 280, 286-287 (2d Cir 2002);

- "In New York *res judicata* also applies to defenses that could have been litigated, including defenses to a foreclosure."  *Yeiser v. GMAC Mortgage Corp.*, 535 F. Supp. 2d 413, 421 (S.D. N.Y. 2008);

- "While New York does not have a compulsory counterclaim rule, a party is not free to remain silent in an action seeking relief inconsistent with the judgment in the first action by asserting what is simply a new legal theory."  *Henry Modell Co., Inc. v. Ministers, Elders and Deacons of Reformed Protestant Dutch Church*, 68 N.Y.2d 456, 461 (1986); and

- "New York's doctrine of *res judicata* requires a court to analyze whether the second action impairs the rights or interests established in the prior action. [*citing Henry Modell Co., Inc., id.*, at 68 N.Y. 2d at 461-462], *Classic Automobiles, Inc. v. Oxford Resources Corp.*. 204 A.D.2d 209, 209 (1st Dept. 1994).

Appellant's criticism of the October 15, 2014 Order as being an "advisory opinion" and dealing with a prospective issue because the Court included a reference to the *Rooker-Feldman* Doctrine and *res judicata* (App. Br., p. 9) is merely grasping at straws.  The Bankruptcy Court allowed a considerable discussion on the record on *Rooker-Feldman* and *res judicata*. (*See*, Transcript of Proceedings, p. 28., l. 15 to p. 33, l. 21, Bankruptcy Case ECF Docket No.: 68).

-20-

## C.  IN ANY EVENT, THE ALLEGATIONS OF
## USURY AND TILA VIOLATIONS WERE THE SUBJECT OF
## DISCUSSION IN THE BANKRUPTCY COURT

Appellant's assertion that: "[t]he claims of the debtor were not put before the Judge by the trustee and their veracity were never tested, however the bankruptcy court went on to rule that debtor is barred from raising any claims from adjudication owing to *Rooker-Feldman and res judicata*." (App. Br., p. 10) is false.

Appellant did not schedule these claims in his original filing in the Bankruptcy Court, they were only asserted later.  When Appellant improperly brought his motion in Supreme Court, Queens County in *Kerstein v. Hassan* (*see*, Point Four A, *supra.*), he calculated that he was charged an interest rate of 144.56% (A - 197), and thus demonstrated his ignorance of the process of giving credits for claims against the property and the payment of closing costs when taking a mortgage.

In fact, the Usury and TILA claims were analyzed by counsel for Mr. Kerstein (T-90) and were the subject of Appellee's analysis in his Reply in further support of the 9091 Motion[7]:

> The Trustee has made the determination that for $45,000.00 he does not wish to incur the time, expense and litigation risk of pursuing claims against Mr. Kerstein's mortgage.  As explained in the underlying Motion papers, the paramount interest of the creditors favors resolving these claims, including most especially,  potential objections to the adequacy of the Kerstein mortgage documents.

> Moreover, the Objection's argument that the Kerstein mortgage is subject to Debtor's claims against Mr. Kerstein because Mr. Kerstein allegedly violated usury laws and the Truth in Lending Act must fail because they were never listed in Debtor's schedules as originally filed, and as were in effect that the time that the Motion was filed (*footnote:* At the time of the filing of the Objection, Debtor filed amended schedules which include references to usury and Truth

---

[7] Appellee's Reply is identified in Appellant's Designation at Item 14, but Appellant failed to include the actual document in Appellant's Appendix.

in Lending violations)

      In any event the Objection freely tosses around the words "usury" and "Truth in Lending Act" without offering any substantiation that these claims will pass muster.  Indeed, any potential claim of usury would be met with a defense that, even taking into account the "points" paid on the Kerstein mortgage, the interest rate charged is still under sixteen (16%) per cent and is, therefore, not usurious. Similarly, the Truth in Lending Act claims would be met with a Statute of Limitations defense, as well as the fact that the basic requirements needed to subject a loan to the Truth in Lending Act are not met (*footnote*:   Generally speaking the Truth in Lending Act applies when: (I) credit is offered or extended to consumers;  (II)   an offering or extension of credit is done "regularly",which means more than five (5) times for transactions secured by a dwelling per year; (III) credit is subject to a finance charge or is payable by written agreement in more than four installments; and (IV)     credit is primarily for personal, family, or household purposes.  It appears that these conditions, II and IV, and possibly I are not present in the case of the Kerstein Mortgage)    In any event, the Trustee has determined that he does not wish to litigate these claims, and would rather accept the $45,000.00 which Mr. Kerstein has offered (and which is in his possession).

The bankruptcy judge is ultimately responsible for an unbiased and informed assessment of a settlement's terms, *Plummer v. Chemical Bank*, 668 F.2d 654, 659 (2d Cir. 1982). However, a court should not conduct a "mini-trial" on the merits, *In re Smart World Tech*, 423 F. #d 166, 177 (2d Cir. 2005), *In re Purofied Down Products*, 50 B.R. 519, 522 (S.D. N.Y. 1993).

      In this case, Chief Bankruptcy Judge Craig gave Appellant every opportunity to make a record and demonstrate every possible reason why the 9019 Motion should be denied.  At the end of the day, none of the grounds upon which Appellant relied in opposing the 9019 Motion had any merit, and the Bankruptcy Court properly approved the Stipulation.

-22-

## POINT FIVE

## THERE WAS NO UNCONSTITUTIONAL TAKING

Appellant argues that the Trustee's acceptance of the $45,000 Offer was an unlawful taking under the Fifth Amendment of the United States Constitution because the Chapter 7 Trustee is "an arm of the US trustee" (App. Br., p. 11).

This assertion is palpably false.  28 U.S.C. § 586 (a) is quite specific with respect to the fact that Chapter 7 Trustees, such as Appellee, are *not* employees of the Government, and states:

> Each United States trustee, within the region for which such United States trustee is appointed, shall-
>
> (1) establish, maintain, and supervise a panel of <u>private trustees</u> that are eligible and available to serve as trustees in cases under chapter 7 of title 11 [emphasis added]; ... [and]
>
> (3) supervise the administration of cases and trustees in cases under chapter 7 ...

Chapter 7 Trustees, while subject to the supervision of the Office of the United States Trustee, are entirely private.   Chapter 7 Trustees are not employees of the United States; they are not paid by the United States.  Chapter 7 Trustees make decisions based on their best business judgment and, in the case of the settlement of a controversy, must obtain the approval of the Bankruptcy Court after notice and hearing.

The sole case upon which Appellant relies, *Louisville Joint Stock Land Bank v Radford*, 295 U.S. 555 (1935) involved a question of whether provisions added to § 75 of the former Bankruptcy Act by the Act of June 28, 1934, known as the Frazier-Lemke Act, operated to take valuable rights in specific property from one person and give them to another, in violation of the Constitution.  A challenge to the law was made by a bank which had been deprived of the value of

-23-

a mortgage in which  – unlike the case here  – it was the lender.  In analyzing the law as applied to the facts, the Supreme Court stated that:

> The bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment. [Footnote 19, *citing* the War Powers Act] Under the bankruptcy power, Congress may discharge the debtor's personal obligation, because, unlike the states, it is not prohibited from impairing the obligations of contracts. [Citation omitted].  But the effect of the Act here complained of is not the discharge of Radford's personal obligation.  It is the taking of substantive rights in specific property acquired by the bank prior to the Act. In order to determine whether right of that nature have been taken, we must ascertain what the mortgagee's rights were before the passage of the Act. We turn, therefore, first to the law of the state. ... But inadequacy of price is not alone ground for setting aside a sale."
> *Louisville Joint Stock Land Bank* , 295 U.S. at 589-590., ...

> The province of the Court is limited to deciding whether the Frazier-Lemke Act, as applied, has taken from the bank without compensation, and given to Radford, rights in specific property which are of substantial value. [citation omitted]. As we conclude that the Act, as applied, has done so, we must hold it void, for the Fifth Amendment commands that, however great the nation's need, private property shall not be thus taken even for a wholly public use without just compensation. If the public interest requires, and permits, the taking of property of individual mortgagees in order to relieve the necessities of individual mortgagors, resort must be had to proceedings by eminent domain, so that, through taxation, the burden of the relief afforded in the public interest may be borne by the public.
> *Louisville Joint Stock Land Bank* , 295 U.S. at 601-602.

The facts in *Louisville Joint Stock Land Bank* area far cry from those here.  Appellant again ignores the fact the he <u>voluntarily</u> filed a Petition pursuant to Chapter 7 of the Bankruptcy Code.  11 U.S.C § 541 (a) provides that the filing, of Appellant's petition "create[d] an estate ... comprised of ...  all legal or equitable interests of the debtor in property.  The Chapter 7 Trustee, being charged with the duty to liquidate that estate for the best interest of the estate's creditors is not "taking" anything within even the most obtuse interpretation of the Fifth Amendment.

-24-

**POINT SIX**

**APPELLANT'S "NEW" ABANDONMENT ARGUMENT
DIRECTLY CONTRADICTS THE BANKRUPTCY CODE**

At the time that Appellant brought his Motion to Reconsider, he also brought the

Abandonment Motion.  For all of the reasons set forth in the Decision (A14 -16), including that the

Abandonment Motion was rendered moot by the approval of the 9019 Motion, as well as the fact

that, on the record of the January 20, 2015 Hearing, Mr. Kerstein's attorney made it absolutely clear

that Mr. Kerstein had no interest in seeking to foreclose on the Residential Property, the

Abandonment Motion was denied.

Now, on appeal, Appellant posits a new argument, based on a demonstrably false

statement, at App. Br., p. 17:

> Further, the Trustee could not have settled claims pertaining
> to the mortgage recordation and foreclosure proceeding as those
> claims were abandoned back to the debtor in this case when the case
> was closed on September 21st,2012.  The debtor had disclosed about
> the foreclosure judgment in his bankruptcy filing A_
> The Trustee generally abandons all property by declining to
> administer the property and simply closing the case.  Paul Krohn,
> properly appointed trustee examined the debtor, examined the affairs
> of the debtor, after having conducted a 11 U.S.C. § 341 meeting of
> creditors closed the meeting and the case, thus abandoning the
> property to the debtor. 11 U.S.C .554.

In fact, the schedules which Appellant filed on June 22, 2012  – which were the only

schedules which Chapter 7 Trustee Paul Krohn had before him when he closed the case  – make

absolutely no mention of "claims pertaining to the mortgage recordation and foreclosure

proceeding".   Schedule B - Personal Property, at Item 21 required Appellant to list "Other

contingent and unliquidated claims of every nature including tax refunds counterclaims of the debtor

-25-

and rights of set off claims." (Emphasis added.). Debtor listed "None". (A - 161)

11 U.S.C 554 ( c ) provides: "Unless the court orders otherwise, <u>any property scheduled</u> under section 521 (a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title. " (Emphasis added.). Since Appellant did not schedule "claims pertaining to the mortgage recordation and foreclosure proceeding did not "revest in the Debtor upon the closing of the estate, as it would in the ordinary course," *Miller v. Generale Bank Nederland, N.V*, 217 F. 3D 74, (2d Cir. 2000). Chapter 7 Trustee Krohn was not made aware of the existence of these alleged claims.

In fact, these alleged claims were scheduled *for the first time*, on July 9, 2014, *after* Appellee  brought the 9019 Motion and Appellant's new counsel made his appearance.  Appellant filed an amended Schedule B which, in response to Item 21, now stated: "Claims against Yair Kerstein under New York Banking Law, HOEPA, TILA, Usury, fraud and others, professional malpractice claims are being looked into and shall be disclosed upon investigation [Value:] Unknown" (Bankruptcy Court ECF Docket No. 38).

Accordingly, to the extent that the Usury and TILA claims ever existed, they did not become known to any Chapter 7 Trustee  – whether Mr. Krohn or Appellee  – until July 9, 2014, long after the Case was initially closed.  These claims were resolved in exchange for the $45,000 Offer, over Appellant's objections, in the 9019 Motion.

## CONCLUSION

The appeal should be dismissed and the Appellee should be awarded costs.

Dated: New York, New York
         May 4, 2015

                                        Respectfully submitted,

                                        **SAMUEL E. KRAMER**
                                        *Attorney for Appellee,*
                                        *Richard E. O'Connell*
                                        *Chapter 7 Trustee of Mohammed Hassan*
                                        * a/k/a Mohammed H. Hassan*

                                        By:     *S/Samuel E. Kramer*

                                                Samuel E. Kramer, Esq.
                                                225 Broadway - Suite 3300
                                                New York, New York 10007
                                                (212) 285-2290
                                                samkatty@bwy.net

To:     Karamvir Dahiya, Esq.
        Dahiya Law Offices, LLC
        75 Maiden Lane, Ste. 506
        New York, New York 10038
        *Attorney for Appelant,  Mohammed Hassan*

        Harold M. Somer, Esq.
        Harold M. Somer, PC
        1025 Old Country Road, Ste. 404
        Westbury, New York 11590
        *Attorney for Yair Kerstein*

-27-

CERTIFICATE OF COMPLIANCE

SAMUEL E KRAMER, an attorney duly admitted to practice in the Eastern District of New York, hereby certifies that this computer generated brief was prepared using a proportionally spaced typeface

Name of typeface: Times New Roman

Point Size: 12 for text and headings and footnotes

Line spacing: Double lengthy quotations greater than two lines, which are single

The total number of words in the brief, inclusive of point headings and footnotes and exclusive of pages containing the cover,  table of contents, table of citations, statement with respect to oral argument, according to the WordPerfect word count function is: 7947

Dated: New York, New York
        May 4, 2015

*S/Samuel E. Kramer*
SAMUEL E. KRAMER, ESQ.